

U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

AUG 14 2014

Gregory S. Winton
The Aviation Law Firm
One Research Court, Suite 450
Rockville, MD 20850

Dear Mr. Winton:

This letter responds to your request for legal interpretation sent to my office on February 12, 2014. You have asked several questions regarding expense-sharing flights that involve exclusive use of a website "by both pilots and aviation enthusiasts, comprising a specific and discreet group of individuals who have demonstrated a common interest and common purpose to share an aviation adventure[.]"

As described in your letter, pilots and aviation enthusiasts apply for membership to the website which is "only available to pilots who ensure they intend to conduct private operations." Upon enrollment, members have access to an isolated, non-public network. The network allows pilots to post an Aviation Adventure with a specific date and time and the points of operation. According to your letter, a member may "select an Aviation Adventure for which he or she has a bona fide common purpose" and request to participate in the planned Aviation Adventure. The pilot may accept or reject the request. If accepted, the pilot may accept a pro rata reimbursement from his or her passengers under 14 C.F.R. § 61.113(c).

We recently answered questions regarding a similar web-based expense-sharing scheme in a legal interpretation to Rebecca MacPherson. See Legal Interpretation to Rebecca B. MacPherson (Aug. 13, 2014). We believe that legal interpretation answers the questions presented in your request for legal interpretation. The MacPherson Interpretation involved AirPooler, a peer-to-peer general aviation flight sharing company that developed an internet-based discovery platform that allows private pilots to offer available space on flights they are intending to take. We concluded that pilots participating in the AirPooler website required a part 119 certificate because they were engaged in common carriage. Although common carriage is not defined by regulation, Advisory Circular No. 120-12A (Private Carriage Versus Common Carriage of Persons or Property) describes common carriage as

2

"(1) a holding out of a willingness to (2) transport persons or property (3) from place to place (4) for compensation or hire."[1]

You suggest there is no holding out under the program described above because the website indicates that transportation is only available to an enthusiast who has demonstrated a common interest in the specific time, date, points of operation, and the particular Aviation Adventure. We disagree. Holding out can be accomplished by any "means which communicates to the public that a transportation service is indiscriminately available" to the members of that segment of the public it is designed to attract. See Transocean Airlines, Enforcement Proceeding, 11 C.A.B. at 350 (1950). Based on your description, the website is designed to attract a broad segment of the public interested in transportation by air.

This response was prepared by Anne Moore, an attorney in the International Law, Legislation, and Regulations Division of the Office of the Chief Counsel. If you have any additional questions regarding this matter, please contact us at your convenience at (202) 267-3073.

Sincerely,

Mark W. Bury
Acting Assistant Chief Counsel for International Law,
Legislation, and Regulations Division, AGC-200

---

[1] In Woolsey v. National Transportation Safety Board, 993 F.2d 516 (5th Cir. 1993), the Fifth Circuit noted that the Advisory Circular's guidelines are not only consistent with the common law definition, but entirely appropriate within the aviation context.



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

AUG 13 2014

Rebecca B. MacPherson
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001-2113

Dear Ms. MacPherson:

This letter responds to your request for legal interpretation sent to my office on May 19, 2014, on behalf of your client, AirPooler, Inc. As set forth in the request for legal interpretation, you have described AirPooler as "a peer-to-peer general aviation flight sharing company that has developed an internet-based discovery platform that allows private pilots to offer available space on flights that they are intending to take[.]"

You have asked for: (1) confirmation that a pilot participating in the AirPooler service is not receiving compensation in violation of 14 C.F.R. § 61.113; and (2) a legal analysis of whether pilots participating in the AirPooler website are commercial operators who would be required to hold a certificate under 14 C.F.R. part 119.

Your request involves two separate but related issues. First, there is the issue of privileges and limitations related to acting as pilot in command of an aircraft for compensation or hire based on the level of certificate a pilot holds. The second issue relates to whether an operation constitutes a commercial operation requiring a person to obtain a part 119 air carrier or operating certificate before the operation may be conducted. The FAA has consistently noted that the privileges and limitations conferred upon pilots are a separate and distinct issue from whether a particular flight would be considered a commercial operation for which a part 119 air carrier or commercial operator certificate is required. See Legal Interpretation to Andy Dobis (May 21, 2014).

**Pilot Privileges**

A person who holds an airline transport pilot certificate or a commercial pilot certificate may act as pilot in command of an aircraft for compensation or hire and may carry persons or property for compensation or hire provided the pilot is qualified in accordance with part 61 and with the applicable parts of the 14 C.F.R. that apply to the operation 14 C.F.R. §§ 61.133(a); 61.167(a).

Conversely, private pilots as a general rule may not act as pilot in command of an aircraft that is carrying passengers or property for compensation or hire nor, for compensation or hire, may they act as pilot in command of an aircraft. 14 C.F.R. § 61.113(a). Section 61.113

contains exceptions to this general prohibition. Among the listed exceptions, § 61.113(c) states that "[a] pilot may not pay less than the pro rata share of the operating expenses of a flight with passengers, provided the expenses involve only fuel, oil, airport expenditures, or rental fees." Based on this provision, a pilot may accept compensation in the form of a pro rata share of operating expenses for a flight from his or her passengers as an exception to the compensation or hire prohibition. If a private pilot accepts more than a pro rata share, that pilot has violated the limits of the expense-sharing exception.

**Commercial Operations**

A part 119 certificate is required for each person operating or intending to operate civil aircraft as an air carrier, commercial operator, or both, in air commerce;[1] or, when common carriage is not involved, in operations of U.S.-registered aircraft with a seat configuration of 20 passengers or more or a maximum payload capacity of 6,000 pounds or more.[2] 14 C.F.R. § 119.1(a). Depending on the operation, the holder of a part 119 certificate must comply with more stringent operating rules than those in part 91, for example, the requirements in parts 121, 125, or 135.[3]

Both the regulatory definition of a commercial operator and the common law definition of common carriage include a compensation element. The regulations define a commercial operator as a "person who, for compensation or hire, engages in the carriage by aircraft in air commerce of persons or property, other than as an air carrier or foreign air carrier or under the authority of Part 375" of Title 14, Code of Federal Regulations. 14 C.F.R. § 1.1. The definition further states that "[w]here it is doubtful that an operation is 'for compensation or hire,' the test applied is whether the carriage by air is merely incidental to the person's other business or is, in itself, a major enterprise for profit." Although common carriage is not defined by regulation, Advisory Circular No. 120-12A (Private Carriage Versus Common Carriage of Persons or Property) describes common carriage as "(1) a holding out of a willingness to (2) transport persons or property (3) from place to place (4) for compensation or hire."[4]

---

[1] "Air commerce" is defined as "interstate, overseas, or foreign air commerce or the transportation of mail by aircraft or any operation or navigation of aircraft within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce."

[2] In the request for legal interpretation, AirPooler has indicated that it would not permit aircraft meeting the seating capacity and payload capacity in § 119.1 to be used by pilots participating in the AirPooler website.

[3] Certain commercial operations, such as aerial work operations, crop dusting, banner towing, and ferry or training flights, are excluded from the certification requirements of part 119. See § 119.1(e)(4)(iii). These operations are permitted within the United States under the less stringent operating rules of part 91. Although a private pilot would not be permitted under § 61.113 to engage in these activities for compensation, a commercial pilot or airline transport pilot would have no such limitation provided the pilot is qualified in accordance with part 61 and with the applicable requirements that apply to the specific operation.

[4] In Woolsey v. National Transportation Safety Board, 993 F.2d 516 (5th Cir. 1993), the Fifth Circuit noted that the Advisory Circular's guidelines are not only consistent with the common law definition, but entirely appropriate within the aviation context.

**Compensation**

In your request for legal interpretation, you maintain that the AirPooler service is not a commercial operation and does not involve common carriage because there is no compensation of the pilots. We disagree. In 1963, the FAA issued a notice of proposed rulemaking (NPRM) entitled "Clarification of Private Pilot Privileges." 28 FR 8157 (Aug. 8, 1963). In the preamble to that NPRM, the FAA stated:

> The ordinary meaning of "compensation" includes the act of making up for whatever has been suffered or lost through another, and the act of remuneration. Sharing expenses would appear to be prohibited when "for hire or compensation" is prohibited, so that an exception to the rule is necessary to preserve the traditional right to share expenses, and which right has not been found objectionable.

This view was set forth in the language of the final rule which established a general prohibition against compensation and hire and listed five exceptions to that general prohibition, which included expense-sharing with passengers. The plain language of current § 61.113(a) continues to reflect that share-the-expense flights are compensation for which there is an exception to the general prohibition against private pilots acting as pilot in command for compensation or hire.

As such, although § 61.113(c) contains an expense-sharing exception to the general prohibition against private pilots acting as pilot in command for compensation or hire, a private pilot may not rely on that narrow exception to avoid the compensation component of common carriage. For this reason, the FAA has required a private pilot to have a common purpose with his or her passengers and must have his or her own reason for travelling to the destination.[5]

Likewise, although airline transport pilots and commercial pilots may act as pilot in command on an aircraft carrying passengers for compensation or hire, they may not conduct a commercial operation involving common carriage without obtaining a part 119 certificate. You have urged that the test for compensation in commercial operations is "the major enterprise for profit" test set forth in the definition of commercial operator. Specifically, you state that a pilot would not be engaged in a major enterprise for profit "if accepting only the cost reimbursements allowed under § 61.113."

Based on the fact that the FAA views expense-sharing as compensation for which an exception is necessary for private pilots, the issue of compensation is not in doubt.

---

[5] The FAA has consistently stated that "the only allowable share-the-costs operations are those which are bona fide, i.e., joint ventures for a common purpose with expenses being defrayed by all passengers and the pilot." See Legal Interpretation from Kenneth Geier (Regional Counsel) to Paul Ware (Feb. 13, 1976); Legal Interpretation to Thomas Chero, (Dec. 26, 1985); Legal Interpretation to Peter Bunce (Nov. 19, 2008); Legal Interpretation to Guy Mangiamele (March 1, 2009); Legal Interpretation to Don Bobertz (May 18, 2009); Legal Interpretation to Mark Haberkorn (Oct. 3, 2011).

Therefore, the "major enterprise for profit" test in § 1.1 is wholly inapplicable. Accordingly, we conclude that, with regard to pilots using the AirPooler website, all four elements of common carriage are present. By posting specific flights to the AirPooler website, a pilot participating in the AirPooler service would be holding out to transport persons or property from place to place for compensation or hire. Although the pilots participating in the AirPooler website have chosen the destination, they are holding out to the public to transport passengers for compensation in the form of a reduction of the operating expenses they would have paid for the flight. This position is fully consistent with prior legal interpretations related to other nationwide initiatives involving expense-sharing flights. See Legal Interpretation from DeWitte Lawson (acting Regional Counsel) to D. David Brown (Apr. 16, 1976); Legal Interpretation to Hal Klee (Dec. 12, 1985); Legal Interpretation to Thomas Chero, (Dec. 26, 1985).

This response was prepared by Anne Moore, an attorney in the International Law, Legislation, and Regulations Division of the Office of the Chief Counsel, and has been coordinated with the Airman Certification and Training Branch of Flight Standards Service. If you have any additional questions regarding this matter, please contact us at your convenience at (202) 267-3073.

Sincerely,

Mark W. Bury
Assistant Chief Counsel for International Law,
Legislation, and Regulations